IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-CT-3124-D

| | |
|---|---|
| JAMES ANTHONY MAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| INVESTIGATOR VANLANDINGHAM, ) | |
| et. al, ) | |
| ) | |
| Defendants. ) | |

James Anthony May ("plaintiff" or "May") filed this action pursuant to 42 U.S.C. § 1983. Defendants Investigator James C. Vanlandingham ("Vanlandingham") and Deputy Joseph M. Kolibabek ("Kolibabek") (collectively, "defendants") moved for judgment on the pleadings [D.E. 25] and for summary judgment [D.E. 31]. Plaintiff responded. Plaintiff also moved for appointment of counsel [D.E. 23] and requested a transfer to a different facility via a "motion for order of complaint" [D.E. 24]. Finally, plaintiff filed two motions captioned "motion for dismiss of affidavit of prejury [sic]" [D.E. 30, 36]. As explained below, defendants' motion for summary judgment is granted, defendants' motion for judgment on the pleadings is denied as moot, and plaintiff's motions are denied.

I.

Plaintiff asks this court to appoint him counsel. There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional" circumstances. Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); see Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. United States Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989). The existence of exceptional

circumstances depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant, 739 F.2d at 163 (internal quotation omitted). The facts of this case and plaintiff's abilities do not present exceptional circumstances. Therefore, plaintiff's motion for appointment of counsel is denied.

Plaintiff also filed a motion captioned "order of complaint." Plaintiff's motion asks that he be granted a transfer from Bertie Correctional Institution to another facility. An inmate has no constitutional right to choose his place of incarceration. See Meachum v. Fanno, 427 U.S. 215, 225 (1976); Johnson v. Ozmint, 456 F. Supp. 2d 688, 695 (D.S.C. 2006) (citing Ajaj v. Smith, 108 F. App'x 743, 744 (4th Cir. 2004) (per curiam) (unpublished)). Additionally, the North Carolina Department of Correction has the discretion to designate an inmate's place of incarceration. See Johnson, 456 F. Supp. 2d at 696. Because plaintiff has no constitutional right to choose his place of incarceration, his motion for transfer is denied.

Plaintiff also filed two motions "for dismiss of affidavit of prejury [sic]," asserting that defendants' motion for summary judgment should be denied because the affidavits submitted by Vanlandingham and Kolibabek contain false statements. Plaintiff has not provided any evidence to support this claim. Therefore, the court denies plaintiff's motions.

II.

The court next considers defendants' motion for summary judgment. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party may not rest on

2

the allegations or denials in its pleadings, see Anderson, 477 U.S. at 248, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation & emphasis removed). A mere scintilla of evidence supporting the case is not enough. Anderson, 477 U.S. at 252. The court construes the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor. Matsushita, 475 U.S. at 587.

A.

Defendants base their motion for summary judgment on the premise that plaintiff has no evidence in the record. See Defs.' Mem. in Supp. of Mot. for Summ. J. 1 [hereinafter "Defs.' Mem."] ("May has submitted no evidence. The undisputed facts—as sworn to in Defendants' affidavits—reveal that Defendants are entitled to judgment as a matter of law."); id. at 2 ("[I]n this case the only facts are Defendants'—each Defendant submits . . . an affidavit, and May has submitted no evidence. The unsworn allegations of the Complaint . . . are not evidence."); id. at 7 ("On the undisputed evidence, May's case is completely baseless."). Defendants' premise is false.

Plaintiff's complaint, written on this District's pro se prisoner form, is verified. See Compl. p. 5 ("I declare under penalty of perjury that the foregoing is true and correct."). Under federal law, unsworn declarations made under penalty of perjury are generally equivalent to statements made under oath. See 28 U.S.C. § 1746. Therefore,

> A [pro se prisoner] plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint. Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion.

Roberson v. Hayti Police Dept., 241 F.3d 992, 994–95 (8th Cir. 2001) (internal citations omitted);

3

see, e.g., Hernandez v. Velasquez, 522 F.3d 556, 561 (5th Cir. 2008) (per curiam) ("For his part, [pro se prisoner] Hernandez presented no evidence at summary judgment, though the allegations in his verified complaint may be considered competent evidence...."); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("The defendants' argument fails to take note of the fact that [pro se prisoner] Colon verified his complaint by attesting under penalty of perjury that the statements in the complaint were true to the best of his knowledge. A verified complaint is to be treated as an affidavit for summary judgment purposes....").

Defendants' summary judgment theories are based on their mistaken premise that plaintiff has no evidence in the record. This error is fatal to the arguments in defendants' memorandum. However, on May 13, 2008, the court directed defendants to submit all medical records concerning plaintiff's treatment [D.E. 37]. On May 29, 2008, defendants did so [D.E. 40]. As discussed below, based on these medical records and other evidence in the record, the court concludes that defendants are entitled to summary judgment.

B.

The court considers the facts in the light most favorable to plaintiff, the non-moving party, and draws all reasonable inferences in his favor. See, e.g., Matsushita, 475 U.S. at 587. On January 11, 2005, plaintiff and another individual were involved in an altercation. Compl. ¶ IV. During this altercation, the other individual struck plaintiff in the face with a shotgun. See id.; Defs.' Mem. Ex. A, ¶ 5; Defs.' Mem. Ex. B, ¶ 7. This blow caused " wounds to [plaintiff's] head and face." Compl. ¶ IV.

Police responded, and Vanlandingham arrived at the scene before Kolibabek. See id. Paramedics arrived at the scene as well. Id. Vanlandingham refused to allow the paramedics to provide medical treatment to plaintiff. Id. Instead, Vanlandingham told the paramedics that he

4

would ensure that plaintiff received medical treatment. Id. Vanlandingham then told Kolibabek to take plaintiff to the hospital for medical treatment. Id. Kolibabek then took plaintiff to the emergency room. Id.

Plaintiff claims that Vanlandingham and Kolibabek were deliberately indifferent to his serious medical needs. See id. Plaintiff makes two specific allegations of deliberate indifference. First, he argues that Vanlandingham was deliberately indifferent to his serious medical needs "when he refused to allow the paramedics to administer medical treatment initially at the scene upon their arrival." Id. Second, plaintiff contends that Kolibabek was deliberately indifferent to plaintiff's serious medical needs either because Kolibabek did not wait for hospital staff to treat plaintiff's injuries before taking plaintiff away from the emergency room, or because Kolibabek failed to notice that hospital staff had not properly treated plaintiff's injuries when Kolibabek took plaintiff away from the emergency room. See id.[1] Plaintiff argues that because of these acts of deliberate indifference, he now has memory difficulties, headaches, blurred vision, and difficulty breathing. Id. Plaintiff seeks $1,000,000 in damages.

C.

Defendants argue that they are entitled to qualified immunity. Government officials are entitled to qualified immunity from civil damages under section 1983 so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Saucier v. Katz, 533 U.S. 194,

---

[1] Plaintiff's actual wording is that Kolibabek "showed a 'deliberate indifference' when he fail to see that Plaintiff received medical treatment when he escorted plaintiff to Beaufort County's Hospital." Compl. ¶ IV. The court interprets plaintiff's argument to be either that Kolibabek did not wait for hospital staff to treat plaintiff before taking plaintiff away from the hospital, or that Kolibabek did not notice that hospital staff had not treated plaintiff before taking plaintiff away from the hospital.

5

200 (2001). Qualified immunity protects government officials where the law is unsettled or murky. See Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the challenged act was clearly forbidden, not whether the action was wrongful in hindsight. See id. The first step in evaluating qualified immunity is to determine whether the plaintiff has alleged the deprivation of a constitutional right. Id.

At the time of the alleged failure to receive medical treatment, plaintiff was a pretrial detainee. Confinement conditions of state pretrial detainees are evaluated under the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). However, the analysis under the Due Process Clause is very similar to the analysis under the Eighth Amendment. See Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc); Hill v. Nicodemus, 979 F.2d 987, 991–92 (4th Cir. 1992); Marshall v. Abbasi, 109 F. App'x 609, 610 n.2 (4th Cir. 2004) (per curiam) (unpublished) ("[W]ith respect to claims of deliberate indifference to medical needs, a pretrial detainee's due process rights are coextensive with a convicted prisoner's Eighth Amendment rights."). The court therefore looks to Eighth Amendment precedent in evaluating defendants' qualified immunity argument.

Plaintiff contends that defendants were deliberately indifferent to his serious medical needs. See, e.g., Nicodemus, 979 F.2d at 991 ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainee[s'] rights to due process when they are deliberately indifferent to serious medical needs." (quotation omitted)). To establish deliberate indifference, a plaintiff must meet a two-pronged test consisting of an objective prong and a subjective prong. Because the court will assume, without deciding, that plaintiff's alleged injuries

6

Case 5:06-ct-03124-D   Document 45   Filed 06/03/08   Page 6 of 10

meet the objective prong,[2] only the subjective prong is at issue.

To meet the subjective prong, a plaintiff must show that the official acted with deliberate indifference. E.g., Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Deliberate indifference requires than an official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Allegations of negligence are not sufficient. See Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).

1.

Construing the facts in the light most favorable to plaintiff, Vanlandingham prevented the paramedics from treating plaintiff. However, Vanlandingham told the paramedics that he would ensure that plaintiff received medical treatment, and then told Kolibabek to take plaintiff to the hospital. This is not deliberate indifference, because Vanlandingham did not disregard plaintiff's need for medical treatment. Rather, he ordered that plaintiff receive medical treatment at the hospital rather than treatment at the scene from paramedics.

The events surrounding plaintiff's injury occurred near the intersection of Sand Pointe Drive and Turkey Trot One Road in Washington, North Carolina. See, e.g., Defs.' Mem. Ex. A, ¶ 3; Defs.' Mem. Ex. B, ¶ 3; Defs.' Mem. Ex. C. At Vanlandingham's direction, Kolibabek took plaintiff to Beaufort County Hospital in Washington, North Carolina. See, e.g., Compl. ¶ IV; Pl.'s Mem. in

---

[2] See, e.g., Ervin v. Mangum, No. 93-7129, 1997 WL 664606, at *1–*2, *5–*7 (4th Cir. Oct. 27, 1997) (unpublished) ("If Ervin's injuries [of swollen eyes, a broken face, and a bleeding nose] were as bad and as obvious as he claims them to have been, we believe they should be considered 'serious medical needs' to which jail officials cannot be deliberately indifferent.").

7

Opp'n to Defs.' Mot. for Summ. J. Ex. 1, ¶¶ 8, 12; Defs.' Resp. to Court Order of May 13, 2008, Attach. 2 (Beaufort County Hospital Medical Records). The court takes judicial notice that Beaufort County Hospital is located approximately 4.5 miles from the intersection of Sand Pointe Drive and Turkey Trot One Road in Washington, North Carolina. See Fed. R. Evid. 201(b).

No rational jury could conclude that the slight time delay involved in transporting plaintiff 4.5 miles (which would in fact benefit plaintiff by providing full-scale hospital treatment rather than temporary paramedic care) constituted deliberate indifference by Vanlandingham. Accordingly, Vanlandingham is entitled to summary judgment.

2.

As for Kolibabek, he too is entitled to summary judgment. Whether plaintiff is alleging that Kolibabek knowingly removed plaintiff from the hospital before plaintiff received medical treatment, or whether plaintiff is alleging that Kolibabek failed to notice that plaintiff had not received medical treatment when Kolibabek took plaintiff away from the hospital, plaintiff's allegations wilt in the face of overwhelming evidence to the contrary.

Defendants have submitted medical records—including doctors' notes, emergency department records, and radiography films—which conclusively establish that plaintiff received extensive medical treatment on January 11, 14, and 15, 2005. Specifically, on January 11, 2005, after X-ray images showed a nondisplaced fracture of the bridge of plaintiff's nose, emergency department staff closed plaintiff's wounds with Dermabond, provided plaintiff a pain killer, and gave him a tetanus shot. Defs.' Resp. to Court Order of May 13, 2008, Attach. 2, p. 2. The attending emergency department physician, Dr. Ward, examined plaintiff, instructed plaintiff to follow up with an ear, nose, and throat specialist the following week, and gave plaintiff the specialist's phone number. Id. Moreover, on January 14, 2005, another Beaufort County Hospital physician, Dr.

8

Perkins, treated plaintiff and ordered full facial films to rule out any other facial fractures. See id. at 13–14. On January 15, 2005, those films were taken, and the radiologist, Dr. Picton, reported the results to Dr. Perkins. See id. at 15. No other fractures were found. Id.

In his verified complaint, plaintiff swore under penalty of perjury that after Kolibabek took him to the hospital on January 11, 2005, he "never saw a Doctor or a Nurse concerning his injuries[;] Kolibabek just merely escorted plaintiff back to [Kolibabek]'s car and took Plaintiff to a Beaufort County Investigator's Office." Compl. ¶ IV. Although plaintiff's verified complaint is evidence that the court considers on summary judgment, this mere scintilla of evidence is not sufficient to avoid defendants' motion for summary judgment. See Anderson, 477 U.S. at 252; Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988) (court need not accept conclusory assertions or naked opinions in order to avoid summary judgment). No rational jury could credit plaintiff's naked opinion that he did not receive medical treatment in the face of overwhelming medical records documenting plaintiff's extensive medical treatment. Moreover, the court rejects as unreasonable the inference that hospital personnel fabricated the medical records. Cf., e.g., Matsushita, 475 U.S. at 587 (court draws all *reasonable* inferences in non-movant's favor); Goldberg, 836 F.2d at 848 (summary judgment should be granted where there is not either direct or circumstantial evidence "of sufficient probative force to reflect a genuine dispute of material fact").

Alternatively, plaintiff attempts to avoid summary judgment by arguing that he only received X-rays at the Beaufort County Hospital on January 11, 2005, and that X-rays do not constitute "medical treatment." See Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. Ex. 1, ¶ 8 ("No records showing that I was seen by Beaufort County Hospital (only for X-ray at Beaufort County Hospital) . . . ."); id. ¶ 12 ("Plaintiff was taken to Beaufort County Hospital only for (X-ray). No medical treatment for Plaintiff's injuries."). Even if the court were to accept the dubious proposition that X-

rays are not "medical treatment," that would not help plaintiff. The medical records establish that on January 11, 2005, Dr. Ward examined plaintiff, and plaintiff had his facial lacerations closed with Dermabond, received a pain killer, was given a tetanus shot, and was ordered to follow up with a specialist. These acts undoubtedly constitute "medical treatment," even if somehow X-rays did not. Further, plaintiff received additional medical treatment on January 14 and 15, 2005. Accordingly, Kolibabek did not act with deliberate indifference towards plaintiff's medical condition, and Kolibabek is entitled to summary judgment.

## III.

For the reasons discussed above, defendants' motion for summary judgment [D.E. 31] is GRANTED. Plaintiff's motion for appointment of counsel [D.E. 23], "motion for order of complaint" [D.E. 24], and two motions "for dismiss of affidavit of prejury [sic]" [D.E. 30, 36] are DENIED. Defendants' motion for judgment on the pleadings [D.E. 25] is DENIED as moot. The clerk is DIRECTED to close this case.

SO ORDERED. This _3_ day of June 2008.

JAMES C. DEVER III
United States District Judge